UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
**WILLIAM JONES**,

              Petitioner,

       **- against -**

**P. CHAPPIUS JR.**, Superintendent, Elmira Correctional Facility,

              Respondent.

**MEMORANDUM DECISION AND ORDER**
17-CV-1699 (AMD) (LB)

------------------------------------------------------------ X
**ANN M. DONNELLY**, United States District Judge:

The *pro se* petitioner, currently incarcerated at the Five Points Correctional Facility, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. On September 28, 2012, the petitioner was convicted after a jury trial of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(3)). On December 12, 2012, the court sentenced the petitioner as a persistent violent felony offender to an indeterminate prison term of twenty-three years to life. The petitioner asserts that the jury's verdict was against the weight of the evidence because it was based on a cooperating witness's testimony. He also alleges that he was denied his due process right to a fair trial. For the reasons that follow, the petition for a writ of habeas corpus is denied.

## FACTUAL BACKGROUND[1]

### I. Overview

On August 2, 2011, the petitioner and Mustapha Keita shot at each other on a street in Staten Island, New York. Police found a .25 caliber cartridge casing at the scene and retrieved security camera footage showing the petitioner holding a dark, pistol-shaped object in his right

---

[1] Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict. *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

hand. Police arrested the petitioner later that day; he admitted that he had a gun during the shoot-out, but denied that he fired it. The petitioner was charged with Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(3)), Third Degree (N.Y. Penal Law § 265.02(1)) and Fourth Degree (N.Y. Penal Law § 265.01(1)). On September 13, 2012, the Honorable Robert Collini denied the petitioner's motion to suppress his statements to the police. The petitioner's trial commenced the same day in front of Judge Collini and a jury.

## II. The Trial

### a. *The Prosecution's Case*

The prosecution called eight witnesses: Detective Douglas Sugerman, Officer Jeffrey Anderson, Sergeant Mark Paquette, Officer Vincent Aguilo, Officer Giovanni Cascio, Detective Jeffrey Aust, Mustapha Keita and Detective Jeffrey Bahm. The prosecution established the following facts:

On the morning of August 2, 2011, Keita was playing with his five-year old daughter outside of his home in the Park Hill neighborhood in Staten Island, New York. (Tr. at 217:16-218:11.) The petitioner and his brother, Daniel Haigler, drove by in a gray car; the petitioner made a "gun sign" with his hands. (*Id.* at 218:12-219:24.) Keita took his daughter inside and borrowed a .357 revolver from a neighbor.[2] (*Id.* at 220:1-7, 243:7-25.)

Keita returned to the intersection of Sobel Court and Targee Street, where he talked on his phone. (*Id.* at 220:17-23.) A woman ran past him; when he looked back, the petitioner was pointing a gun at him. (*Id.* at 220:20-221:12.) Keita heard a shot and returned fire, striking Haigler in the foot. (*Id.* at 220:20-222:11, 246:1-4.) Keita put the gun back in his pocket and ducked behind a parked car for cover. (*Id.* at 257:2-259:7.) The petitioner approached him and

---

[2] Keita was on parole following his conviction of attempted robbery. (*Id.* at 234:15-241:1.)

fired three more shots, cocking the gun in his hand with each shot. (*Id.* at 224:12-25.) Keita then ran away. (*Id.* at 259:12-20.)

Police Officer Jeffrey Anderson of the 120 Precinct Housing Unit arrived at the scene within two minutes. The petitioner, dressed in Hawaiian shorts and a white shirt, was there with Haigler, who was bleeding from the wound to his foot. (*Id.* at 45:6-24.) Anderson stayed with the petitioner and Haigler until an ambulance arrived. (*Id.* at 56:23-58:22.)

In the meantime, Officer Vincent Aguilo and Sergeant Mark Paquette of the Anti-crime Unit also arrived at the scene. (*Id.* at 69:7-10, 101:14-102:7.) They found a bloody shoe and a .25 caliber cartridge casing on the street close to the intersection of Targee Street and Sobel Court (*id.* at 69:12-70:17), but did not find a gun (*id.* 120:13-16).[3] Paquette noticed police cameras on nearby street corners and called the police department's communication office to see whether the cameras captured the shootout. (*Id.* at 71:9-72:7.) An officer reviewed the tape and told Paquette that he saw a heavyset black male wearing a white shirt and white-and-blue Hawaiian shorts shooting a gun. (*Id.* at 72:4-10.) Paquette broadcast the description over the department radio and went to the emergency room at the Richmond University Medical Center. (*Id.* at 72:11-19.)

The petitioner was in the emergency room, still wearing the white shirt and Hawaiian shorts. (*Id.* at 73:1-3.) Officer Paquette photographed the petitioner with his phone and sent the picture to the officer at the communication office, who confirmed that it matched the suspect on

---

[3] Evidence Collection Unit Officer Giovanni Cascio took the spent cartridge casing to the precinct, vouchered it and sent it to the lab to be tested. (*Id.* at 144:19-149:5.) Detective Jeffrey Bahm of the Firearms Analysis Section determined that the recovered cartridge was a .25 caliber casing, which could be fired from a semiautomatic pistol. (*Id.* at 295:7-25, 297:1-22.) To cock a semiautomatic weapon, the top portion must be pulled back and released. (*Id.* at 295:19-296:23.) A cartridge is then ejected from the gun when the trigger is pulled. (*Id.*)

3

the tape. (*Id.* at 73:6-16.) At Paquette's direction, Aguilo handcuffed the petitioner and brought him to the 120 Police Precinct. (*Id.* at 74:4-5, 107:10-22.)

Detective Jeffrey Aust advised the petitioner of his constitutional rights, which the petitioner waived in writing. (*Id.* at 157:12-161:6.) The petitioner explained that he and his brother were walking on Sobel Court toward Targee Street when they heard gunfire and ducked behind a van. (*Id.* at 161:9-162:6.) After Detective Aust told the petitioner that police cameras had captured the entire incident, the petitioner added that an "African" had a gun, so he took out his own gun to protect his brother, but did not fire it. (*Id.* at 162:8-23.) The petitioner wrote out this statement as well. (*Id.* at 168:1-7.)

Detective Douglas Sugerman retrieved the video footage of the shootout from a surveillance "box" on the corner of Sobel Court and Targee Street. (*Id.* at 28.) The box contained two cameras pointed at different angles, one looking down Sobel Court and the other looking down Targee Street. (*Id.* at 36:9-25.) The footage shows bystanders running from the scene ten seconds after the petitioner walked past the camera; it then shows the petitioner holding a dark, pistol-shaped object in his right hand and retreating behind a car, and later holding the object in a manner consistent with firing it. (*Id.* at 332:20-333:1, 334:22-335:4.)

Keita was arrested for his part in the shoot-out, and pleaded guilty, pursuant to a cooperation agreement, to possessing a firearm. (*Id.* at 287:25-288:4.) Keita hoped that his truthful testimony would result in a shorter sentence. (*Id.* at 225:5-227:11.)

    b. *The Defense Case*

The petitioner did not put on a case. (*Id.* at 298:25-299:22.)

### c. *The Jury Instructions, Jury Deliberations and Verdict*

Judge Collini's charge included an instruction about how to evaluate the testimony of cooperating witnesses. He explained that jurors could question "[t]he facts and circumstances of the witness's prior criminal record" with respect to "the witness's credibility," and consider how a cooperating witness's hopes for a particular benefit may have "affected the truthfulness of the witness's testimony." (*Id.* at 351:2-12.) Judge Collini submitted one charge to the jury: Criminal Possession of a Weapon in the Second Degree. (*Id.* at 362:11-13.)

The jury sent out two notes during deliberations. (*Id.* at 372:15-373:5.) In the first note, the jury requested "[o]ne, video footage; two, pictures; three, Jones' statement." (*Id.* at 372:15-24.) In the second note, the jury wrote that they had reached a verdict. (*Id.* at 372:25-373:5.) The jury found the petitioner guilty of Criminal Possession of a Weapon in the Second Degree. (*Id.* at 373:6-375:20.)

### d. *Post-Verdict Motion*

On October 5, 2012, the petitioner, proceeding *pro se*, filed a motion to set aside the verdict based on "newly discovered evidence" in the form of a witness, "Rosa," who claimed that she heard only one gunshot. (ECF Nos. 7-5, 7-6 at 2.) On November 28, 2012, Judge Collini denied the motion.

### e. *Sentence*

The petitioner was sentenced on December 12, 2012. Judge Collini first reviewed the petitioner's criminal record to determine whether he was eligible to be sentenced as a mandatory persistent violent felony offender.[4] The petitioner had six felony convictions, including three

---

[4] A persistent violent felony offender is a person who stands convicted of a defined violent felony after having previously been subjected to two or more predicate violent felony convictions. N.Y. Penal Law § 70.08[1](a).

5

violent felonies, making him a persistent violent felony offender pursuant to Penal Law § 70.08. Judge Collini sentenced him to an indeterminate prison term of twenty-three years to life. (ECF No. 8-11.)

### f. *Post-Conviction Motion*

On September 23, 2013, the petitioner, proceeding *pro se*, moved to vacate his conviction pursuant to C.P.L. §§ 440.10(1)(g) and (h). (*See* ECF No. 7-10 at 12.) The petitioner filed an affidavit from Jaquan Smith, in which Smith stated that he had seen the shooting through a window, and that the petitioner had a black cell phone, not a gun, in his hand. (*Id.*) The petitioner argued that this new evidence "clearly show[ed] that the defendant was not the perpetrator of the crimes charged." (*Id.*)

On January 2, 2014, Judge Collini denied the motion, finding that the Smith affidavit could not overcome the overwhelming evidence presented at trial.[5] (ECF No. 7-8.)

## PROCEDURAL HISTORY

### I. Appeals

The petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department on June 3, 2014. (ECF No. 7-2.) The petitioner made the following arguments on appeal: that the conviction was against the weight of the credible evidence because it was based on a cooperator's testimony (*id.* at 13-16); that the petitioner was denied a fair trial because "the court (a) gave an impeachment charge that omitted the jury's duty to 'carefully scrutinize' the testimony of the cooperating witness; and (b) failed to give a circumstantial evidence charge" (*id.* at 16-22); and that the sentencing court denied him due process by basing

---

[5] Judge Collini also noted that Smith and the petitioner were incarcerated together at the Great Meadow Correctional Facility when Smith swore his affidavit, casting doubt on the credibility of his claim. (ECF No. 7-8 at 4 n.4.)

the sentence on crimes of which he had not been convicted, resulting in an excessive sentence (*id.* at 23-25).

In September of 2015, the petitioner also appealed the trial court's denial of his 440.10 motion. (ECF No. 7-9.) The petitioner argued that Smith's affidavit, together with evidence from Rosa Hayes, would have established that the petitioner did not have a gun. (*Id.* at 12-18.)

On March 28, 2016, the Appellate Division affirmed the judgment of conviction. (ECF No. 7-4.) The court held that the evidence was legally sufficient to establish the defendant's guilt of the charged crime, and that the conviction was not against the weight of the evidence simply because the witness "had an unsavory background and testified pursuant to a cooperation agreement." (*Id.* at 2.) The court also held that the jury instruction claims were unpreserved, and in any event, meritless. The court's charge on credibility, taken from the pattern jury instructions, "adequately conveyed to the jury the appropriate standard" by which to evaluate the cooperator's testimony. (*Id.* (citation omitted).) Moreover, the petitioner was not entitled to a circumstantial evidence charge because the case included both direct and circumstantial evidence.[6] (*Id.*) Finally, the court held that the sentence was not excessive. (*Id.*)

The Appellate Division affirmed the denial of the 440.10 motion on the same day, ruling that the "Supreme Court providently exercised its discretion in denying, without a hearing, the defendant's motion to vacate his judgment of conviction . . . on the basis of certain allegedly newly discovered evidence." (ECF No. 7-11.)

On August 2, 2016, the Court of Appeals denied the petitioner's application for leave to appeal. (ECF Nos. 7-15, 7-16).

---

[6] The petitioner argued in the alternative that his trial counsel was ineffective "for neglecting to object to the court's erroneous impeachment charge and neglecting to request a circumstantial evidence charge." (ECF No. 7-2 at 22.) The Appellate Division rejected the argument since it found that both claims were meritless. (ECF No. 7-4 at 2.)

7

## II. Habeas Petition

On March 23, 2017, the petitioner filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254, claiming that his conviction was against the weight of the evidence and that he was denied his due process right to a fair trial.[7] (ECF No. 1.)

## III. Post-Petition Motions

On July 20, 2018, the petitioner moved to stay the habeas proceedings so that he could exhaust his state court remedies on new claims including ineffective assistance of counsel and various alleged problems with the trial. (ECF No. 12.) On August 16, 2018, I denied the motion to stay as moot because those claims were time barred under the AEDPA.

On September 7, 2018, the petitioner filed a motion to produce documents and to amend, correct or supplement his petition to bring additional ineffective assistance of counsel claims against his trial and appellate counsel. (ECF No. 16-1.) On December 13, 2018, I denied both motions as moot because the ineffective assistance of counsel claims were time barred, his circumstances did not qualify for equitable tolling and he did not establish that he should be permitted to bring these claims by amending his original petition. (ECF No. 19.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits. 28 U.S.C. § 2254(d); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015). The federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable

---

[7] The petitioner's first petition did not include his signature. (ECF No. 1.) At the Court's instruction, the petitioner refiled his petition on April 12, 2017, with his signature. (ECF No. 5.)

determination of the facts in light of the evidence presented in the State court proceeding." *Id.*; *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not include principles of constitutional law grounded solely in the holdings of courts of appeals or refinements of general principles of Supreme Court precedent into specific rules. *See Jackson v. Conway*, 763 F.3d 115, 134 (2d Cir. 2014) ("[W]e must scrupulously avoid using our decisions (or those of other circuits) to 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that the Court has not announced.") (quoting *Marshall v. Rodgers*, 596 U.S. 58, 64 (2013) and citing *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam)).

A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412-13. In assessing whether a state court decision involves an unreasonable application of clearly established federal law, the question is "whether the state court's application . . . was objectively unreasonable," rather than merely incorrect. *Id.* at 409-10. A state court prisoner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A petitioner can seek federal habeas corpus relief only after he exhausts state court

remedies, and gives the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (citations omitted).

## DISCUSSION

### I. Weight of the Evidence

The petitioner claims that his conviction was against "the weight of credible evidence" because it relied on the "testimony of a witness who was part of the crime," and who had received a deal from prosecutors. (ECF No. 5 at 5.)

The Supreme Court has made clear that challenges to the sufficiency of evidence in a state court prosecution face a high bar in habeas proceedings because they are subject to two layers of judicial deference. *Parker*, 567 U.S. at 43 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (per curiam). First, because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial," *see Coleman*, 566 U.S. at 651 (citation omitted), a state court reviewing a jury's verdict of guilty must uphold it if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319. Second, on habeas review, "a federal court may not overturn a state decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (citation omitted).

Under New York law, a person is guilty of criminal possession of a weapon in the second degree when he knowingly possesses any loaded firearm. N.Y. Penal Law § 265.03(3). The evidence before the jury established the elements of this crime. Thus, the jury saw video footage of the petitioner firing a gun at Keita. Keita testified that he heard gunfire and saw the petitioner fire the gun at him. Police officers found a spent cartridge casing at the scene near where the petitioner had fired his gun. The petitioner admitted that he took out a gun to protect his brother, but denied firing it. On the basis of these facts, the jury found the petitioner guilty of Criminal Possession of a Weapon in the Second Degree, and the only question under *Jackson* is whether that finding was "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. The Appellate Division—affording "great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor" (ECF No. 7-4 at 1)—did not think so, and that determination in turn was not objectively unreasonable.

## II. Due Process

The petitioner claims that his conviction violated his due process right to a fair trial. He does not identify facts specific to this claim or specify how his right to a fair trial was violated. Instead, he argues, as he did in his sufficiency claim, that the conviction was unjust because it was based on the testimony of a cooperating witness. Construing the petition to "raise the strongest arguments" it suggests, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted), I interpret the petitioner's claim to be that the trial court did not adequately convey to the jury that Keita was a cooperating witness, or how to evaluate his credibility.

The Appellate Division rejected this argument because it was unpreserved and, in any event, meritless; the trial court did instruct the jury on how to evaluate the testimony of a cooperating witness. (ECF No. 7-4 at 2.)

Federal courts are precluded from "review[ing] questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citation omitted)). When a state court's decision is based on independent and adequate state grounds, the claim is "necessarily beyond the reach of federal *habeas corpus* review" unless the petitioner can establish either cause and prejudice for the procedural default or that failure to consider the claim would result in a fundamental miscarriage of justice. *Brunson v. Tracy*, 378 F. Supp. 2d 100, 106 (E.D.N.Y. 2005) (citing *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) and *Coleman*, 501 U.S. at 750).

This is the case even when the state court also rules on the merits. "If a state court has found that a claim is unpreserved for appellate review and then ruled 'in any event' on the merits, this determination constitutes an adequate and independent procedural bar." *Roberts v. Smith*, No. 10-CV-4264, 2010 WL 5288198, at *2 (E.D.N.Y. Dec. 14, 2010) (citing *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

New York State's contemporaneous objection rule is an adequate and independent state ground for denying a claim. *Velasquez*, 898 F.2d at 9; *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir.

2011) (collecting cases). Accordingly, the petitioner's claim is procedurally barred unless he establishes cause for the default and prejudice, or demonstrates "that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 753). Cause can be established by showing that "'some objective factor external to the defense impeded counsel's efforts' to comply with the State's procedural rule." *Copeland v. Walker*, 258 F. Supp. 2d 105, 130 (E.D.N.Y. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citation omitted)). To establish prejudice, the petitioner must demonstrate a "reasonable probability" that the outcome of the trial would have been different but for the alleged violation. *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)). A miscarriage of justice occurs only in extraordinary cases, such as the conviction of a person who is actually innocent. *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlub v. Delo*, 513 U.S. 298, 321 (1995) (citation omitted)).

The petitioner has not asserted any cause for the procedural default or that denying this claim would result in a miscarriage of justice. Accordingly, his claim that the court's charge violated his right to due process is procedurally barred. In any event, the claim does not have merit. The propriety of a state court's jury charge is ordinarily a matter of state law that does not raise a federal constitutional issue. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.") (citation omitted). Habeas relief is available only if the instruction "violated some right which was guaranteed to the defendant by the Fourteenth Amendment," and not because the instruction is "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

A jury instruction violates due process if it does not "give effect" to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979)). That did not happen here. Judge Collini gave the jury clear instructions on the elements of the charged crime, and the petitioner does not say otherwise. (*See* ECF No. 8-10 at 362-63.) Even if there was any error in the jury instructions, there was no due process violation, and habeas relief is not available.

### III. Motion to Stay

On December 17, 2019, the petitioner moved to stay the habeas proceedings so that he could exhaust unidentified issues in a "440 renewal" motion pending in state court. (ECF No. 22.) I have asked the petitioner to provide me a copy of this motion or to submit a motion describing the reasons for a stay. The petitioner has not done so. According to the respondent, the "renewal motion" in state court is a copy of the petitioner's 2013 *pro se* motion to vacate his conviction, in which the petitioner argued that new evidence established his innocence. (*See* ECF No. 25 ¶ 10.) The respondent argues that a stay would be futile because that claim is time barred. (*Id.* ¶ 11.) I agree.

Under the AEDPA, petitioners seeking habeas relief from state court convictions have one year to bring their claims. The one-year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The petitioner's judgment of conviction became final on October 31, 2016, ninety days after the Court of Appeals denied leave. Accordingly, the one-year limitations period ended on October 31, 2017. Because the petitioner brings his actual innocence claim over a year after his final state court judgment, this claim is untimely.

I interpret the petitioner's stay motion to raise the "strongest arguments that [it] suggest[s]," *Triestman*, 470 F.3d at 474, and construe his motion to argue that the statute of limitations should be equitably tolled or that he may add these claims to his original petition because they relate back to his original claims. Neither is convincing.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," but should be "applie[d] only in . . . 'rare and exceptional circumstance[s].'" *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (internal citations omitted). A court may toll the AEDPA one-year statute of limitations only if the petitioner establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citations omitted). "Garden variety claim[s] of excusable neglect" do not warrant equitable tolling. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). To warrant equitable tolling, a petitioner must show the "link of causation [that] . . . the extraordinary circumstances . . . prevent[ed] timely filing." *Valverde*, 224 F.3d at 134; *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("[I]t is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.") (citation omitted).

The petitioner's case is not one of the rare cases in which equitable tolling is appropriate. Even assuming that the petitioner pursued his habeas petition diligently and that the Smith affidavit is an extraordinary circumstance, the petitioner has not established, as he must, how he was prevented from filing his actual innocence claim on time. Indeed, the petitioner has had the Smith affidavit since 2013, and could have exhausted his actual innocence claim and added it to his 2017 habeas petition. Accordingly, equitable tolling does not apply here.

Nor has the petitioner established that he should be permitted to bring these claims by amending his original petition. Amendment of a habeas petition is permissible if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see* 28 U.S.C. § 2242 (an application for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). In determining whether the claim arises out of the same conduct or occurrence, "the pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims." *Fama v. Comm'r of Corr. Srvs.*, 235 F.3d 804, 815 (2d Cir. 2000) (citation and alteration omitted). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005); *see also Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) (summary order) ("[C]laims in an amended petition [are limited] to those that arose from the same core facts alleged in the original petition, not those related generally to petitioner's trial, conviction, or sentence.") (citation omitted)).

In his original habeas petition, the petitioner challenged his conviction because it was based on a cooperating witness's testimony. In his actual innocence claim, the petitioner maintains that the testimony of a different witness, who did not testify at trial, would lead a jury to conclude that he was not guilty. Although both claims relate generally to witnesses, they arise from different facts—Keita's credibility in front of the jury on the one hand, and the trial judge's denial of a new trial on the other. Moreover, the petitioner's original petition—which focused

only on the credibility of the cooperator's testimony at trial—did not give fair notice to the respondents that he would resurrect his unexhausted claim about the post-trial affidavit.[8]

## CONCLUSION

Accordingly, the petition for a writ of habeas corpus, and the motion to stay, are denied in their entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      March 26, 2020

---

[8] On March 19, 2020, the petitioner requested another extension of time to file his motion to stay. (ECF No. 28.) As explained above, the motion to stay is futile. Accordingly, the petitioner's request for an extension is denied.